UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GURGLEPOT, INC., | ) | |
| | ) | |
|     Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
|     v. | ) | CIVIL ACTION |
| | ) | NO.  14-12760-JGD |
| NEW SHREVE, CRUMP & LOW LLC, | ) | |
| | ) | |
|     Defendant/Counterclaim Plaintiff. | ) | |

**MEMORANDUM OF DECISION AND ORDER
<u>ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS</u>**

December 23, 2015

DEIN, U.S.M.J.

### I. <u>INTRODUCTION</u>

The plaintiff, GurglePot, Inc. ("GurglePot"), designs and sells a line of fish-shaped ceramic pitchers under the registered trademark "GurglePot."  The defendant, New Shreve, Crump & Low LLC ("New SCL"), owns and operates fine jewelry stores with locations in Boston and Chestnut Hill, Massachusetts.  In addition to sales of jewelry and other gift items, New SCL markets and sells a line of cod-shaped ceramic pitchers under the trademark "Gurgling Cod."  It also owns a trademark registration for certain elements of the Gurgling Cod trade dress, and claims an exclusive right to use that trade dress in connection with the marketing, distribution and sale of ceramic pitchers in the United States.

In December 2013, after New SCL accused GurglePot of infringing upon its trademark rights, GurglePot filed this action against New SCL in the United States District Court for the

Western District of Washington. The matter was transferred to this court in June 2014. By its Second Amended Complaint, GurglePot is seeking cancellation of New SCL's trade dress registration, a declaratory judgment that New SCL's trade dress is invalid and that GurglePot's pitcher does not infringe an enforceable trade dress, and monetary and injunctive relief for New SCL's alleged tortious interference with GurglePot's business expectations and relations. In response to the plaintiff's claims, New SCL has asserted Counterclaims against GurglePot for infringement of its registered trade dress pursuant to Section 32 of the Lanham Act, 15 U.S.C. § 1114(1) (First Counterclaim); trade dress infringement, unfair competition and false designation of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Second Counterclaim); common law trade dress infringement and unfair competition (Third Counterclaim); and unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A (Fourth Counterclaim).

      The matter is before the court on the "Plaintiff's Motion to Dismiss Counterclaims" (Docket No. 76), by which GurglePot is seeking dismissal of the Counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The plaintiff contends that all of New SCL's claims must fail as a matter of law because its Gurgling Cod product is ineligible for trade dress protection under the Lanham Act, and is otherwise unprotected under federal copyright or patent law. As described below, GurglePot's assertion that New SCL's product falls outside the scope of the Lanham Act, and cannot qualify for protection under trademark law, is at odds with the relevant authority. Accordingly, and for all the reasons detailed herein, this court finds that New SCL has stated claims for relief under federal and state law, and that the plaintiff's motion to dismiss must be DENIED.

## II.  STATEMENT OF FACTS

When ruling on a motion to dismiss a counterclaim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), "[t]he court must accept all factual averments in the counterclaim as true and draw all reasonable inferences in the counter-claimant's favor."  Brandt v. Advanced Cell Tech., Inc., 349 F. Supp. 2d 54, 57 (D. Mass. 2003).  In doing so, the court "can consider (a) 'implications from documents' attached to or fairly 'incorporated into the [counterclaim],' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in [the counterclaim] plaintiff's 'response to the motion to dismiss.'"  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quoting Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).  Applying this standard to the instant case, the relevant facts are as follows.[1]

### New SCL's Gurgling Cod Trade Dress

The defendant, New SCL, is the owner and operator of the Shreve, Crump & Low fine jewelry stores.  (Countercl. ¶ 7).  The first such store was established in Boston in 1796, and is one of the oldest jewelry stores in the country.  (Id. ¶ 8).  It has long had a reputation as a purveyor of quality jewelry, watches and giftware.  (Id.).  New SCL has been operating the Shreve, Crump & Low stores in Boston and Chestnut Hill, Massachusetts since 2006, when it purchased substantially all of the assets of the business.  (Id. ¶ 9; 2nd Am. Compl. (Docket No. 47) ¶ 11).

---

[1]  In accordance with the relevant standard, this court has considered the facts alleged in New SCL's Counterclaims ("Countercl. ¶ __"), which are set forth beginning on page 7 of its Answer and Counterclaims (Docket No. 50), as well as the documents attached to the Plaintiff's Memorandum in Support of Motion to Dismiss Counterclaims (Docket No. 76-1) ("Pl. Ex. __"), the documents attached to the Defendant/Counterclaim Plaintiff's Opposition to Plaintiff's Motion to Dismiss Counterclaims (Docket No. 79) ("Def. Ex. __"), and any facts that have not been disputed by the parties.

In addition to jewelry and other gift items, New SCL markets and sells, both in its stores and through its website, a line of cod-shaped ceramic pitchers under the trademark "Gurgling Cod." (2nd Am. Compl. ¶ 11; Countercl. ¶ 10).  According to the defendant, the Gurgling Cod has been sold by New SCL and its predecessor, Shreve, Crump & Low, for more than 50 years.  (Countercl. ¶ 11).  It further alleges that "[t]he consuming public has come to associate the distinctive shape and appearance of the Gurgling Cod® (the "Gurgling Cod Trade Dress") exclusively with New SCL[,]" and that the Gurgling Cod Trade Dress has become widely recognized by the public as a ubiquitous symbol of Boston.  (Id. ¶¶ 12-13).

New SCL is the owner of a trademark registration for certain elements of the Gurgling Cod Trade Dress.  (Id. ¶ 14).  The registration was issued by the United States Patent and Trademark Office on February 10, 2009.  (Id. at Ex. A).  As described therein, New SCL claims the following design in connection with "ceramic pitchers":



(Id.).  The registration also provides that "[t]he mark consists of three (3) dimensional configuration of a fished shaped container.  The material shown in the broken lines is not claimed as part of the mark." (Id.).  Moreover, it specifically disclaims color as a feature of the mark.  (Id. ¶ 14).  New SCL contends that it has an exclusive right to use the Gurgling Cod Trade

Dress in connection with the marketing, distribution and sale of ceramic pitchers throughout the United States.  (2nd Am. Compl. ¶ 12).

### The GurglePot Pitcher

GurglePot also manufactures a line fish-shaped ceramic pitchers (the "GurglePot Pitchers"), which it sells to consumers in the United States and elsewhere, including in Massachusetts, under the trademark "GurglePot."  (Id. ¶ 10; Countercl. ¶¶ 15-16). The GurglePot Pitchers are sold directly to customers through the plaintiff's website, and indirectly through a distribution channel of retailers, including at least one retailer in the greater Boston area.  (Countercl. ¶ 16; see also 2nd Am. Compl. ¶¶ 18, 20).  New SCL claims that the plaintiff's GurglePot Pitchers compete directly with its own line of Gurgling Cod pitchers.  (Countercl. ¶ 17).

The GurglePot Pitcher is depicted in New SCL's counterclaims, as well as elsewhere in the record as follows:



(Countercl. ¶ 15; see also Def. Opp. Mem. at 4).  New SCL alleges that the configuration of the plaintiff's product is confusingly similar to its Gurgling Cod pitcher because, at a minimum:

a. Each pitcher is in the shape of fish with an open mouth serving as the opening at the top of the pitcher;

    b. Each pitcher depicts a fish with its tail bent up behind the fish serving as the handle of the pitcher;

    c. Each pitcher depicts a flattened portion of a fish's abdomen serving as all or part of the base upon which the pitcher stands;

    d. Each pitcher depicts a fish's eyes as two concentric circles on either side of the pitcher;

    e. Each pitcher depicts the tail fin of a fish connecting with the middle of the top of the fish's head; and

    f. Each pitcher depicts a fish with a side or "pectoral" fin below the gill line of the fish's head and placed at either side of the pitcher.

(Countercl. ¶18). Thus, New SCL claims that GurglePot's unauthorized use of the Gurgling Cod Trade Dress infringes upon its rights under both federal and state law.

### The Present Litigation

In October 2013, New SCL sent a demand letter to GurglePot in which it accused GurglePot's fish-shaped pitcher of violating its rights under Sections 32 and 43(a) of the Lanham Act, as well as under state and common law. (2nd Am. Compl. ¶ 14). New SCL also contacted one of GurglePot's customers, Alfred F. DeScenza & Son, Inc. ("DeScenza"), on or about November 7, 2013, and demanded, among other things, that DeScenza cease and desist from any and all sales, distribution, promotion and advertising of any fish-shaped ceramic pitchers, including the GurglePot Pitchers, that are confusingly similar to New SCL's Gurgling Cod pitcher. (Id. ¶ 18). Following some additional communications between New SCL and GurglePot, the plaintiff filed this action against New SCL in the Western District of Washington. (Pl. Mem. at 2; Def. Opp. Mem. at 4). The matter was transferred to this court on June 27, 2014. (Docket No. 36).

6

On July 28, 2014, GurglePot filed its Second Amended Complaint for Cancellation of Trademark Registration, Declaratory Judgments of Invalidity and Noninfringement, and Tortious Interference.  (Docket No. 47).  New SCL then filed its Counterclaims along with its Answer to that complaint.  (Docket No. 50).  After the parties' failed to resolve their dispute through mediation in March 2015, GurglePot filed the instant motion to dismiss the defendant's Counterclaims.

### III.  DISCUSSION

#### A.  Standard of Review

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) test the sufficiency of the pleadings.  Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the counterclaim plaintiff.  Brandt, 349 F. Supp.2d at 57.  Dismissal is only appropriate if the counterclaim, so viewed, fails to allege a "plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

"The plausibility inquiry necessitates a two-step pavane."  Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  "First, the court must distinguish 'the [counterclaim's] factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the [counterclaim] defendant is liable for the misconduct alleged.'"  Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011))

7

(additional citation omitted).  While a counterclaim attacked by a motion to dismiss "does not need detailed factual allegations," the counterclaim plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl., 550 U.S. at 555, 127 S. Ct. at 1964-65 (citations omitted).  Accordingly, the factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the [counterclaim] are true (even if doubtful in fact)."  Id. at 555, 127 S. Ct. at 1965.  This court finds that New SCL has stated claims for relief under the applicable standard, and that GurglePot's motion to dismiss the Counterclaims must therefore be denied.

**B.     GurglePot's Challenge to New SCL's Federal Trade Dress Claims**

New SCL has asserted two Counterclaims against GurglePot for violations of its federal trademark rights.  Specifically, by its First Counterclaim, New SCL alleges that GurglePot's unauthorized use of the Gurgling Cod Trade Dress constitutes infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).  By its Second Counterclaim, New SCL alleges that GurglePot's conduct not only infringes upon its rights in the Gurgling Cod Trade Dress, but also constitutes unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The plaintiff has moved to dismiss these claims on the grounds that the Gurgling Cod is ineligible for protection as trade dress under federal law.  In particular, GurglePot argues that New SCL's claims seek protection for nothing more than the aesthetic features of its fish-shaped pitcher, which fall within the domain of federal copyright law rather than federal trademark law.  Because there is no dispute that New SCL has no copyright registration or patent protection for the Gurgling Cod design, and has not brought

any claims against GurglePot for copyright or patent infringement, GurglePot reasons that New SCL has failed to state any claims for relief under federal law. For the reasons detailed below, this court finds that New SCL's claims fall within the scope of the Lanham Act.

### Trade Dress Protection Under the Lanham Act

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28, 123 S. Ct. 2041, 2045, 156 L. Ed. 2d 18 (2003) (quoting 15 U.S.C. § 1127). The "Act extends protection not only to words and symbols, but also to 'trade dress,' defined as 'the design and appearance of a product together with the elements making up the overall image that serves to identify the product presented to the consumer.'" Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 37-38 (1st Cir. 2001) (quoting Chrysler Corp. v. Silva, 118 F.3d 56, 58 (1st Cir. 1997)) (additional citation omitted). "The primary purpose of trade dress protection is to protect that which identifies a product's source." Id. at 38. The federal courts, including the Supreme Court, "recognize trade dress claims based both on product packaging and on 'product design/configuration.'" Id. (quoting Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 213-14, 120 S. Ct. 1339, 146 L. Ed. 2d 182 (2000)). Thus,

> [t]he design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods.

TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 28, 121 S. Ct. 1255, 1259, 149 L. Ed. 2d 164 (2001).

In the instant case, New SCL alleges that consumers associate the "distinctive shape and appearance" of the Gurgling Cod "exclusively with New SCL[,]" and that GurglePot's use of its Gurgling Cod Trade Dress "is likely to cause confusion or mistake . . . as to the origin, sponsorship, or approval among and between the parties and their respective goods." (Countercl. ¶¶ 12, 28). In light of this secondary meaning, New SCL contends that it is entitled to trade dress protection. Nevertheless, the plaintiff argues that New SCL is seeking to protect the sculptural features of its product, which could qualify for protection under copyright law, but does not qualify as trade dress entitled to protection under federal trademark law. (Pl. Mem. at 11-13). This court finds that GurglePot's theory is not supported by the relevant authority.

As an initial matter, to the extent GurglePot is arguing that New SCL cannot seek trade dress protection for features that can be protected under copyright law, its argument must fail at this stage as a matter of law. Courts that have addressed the issue have found that "a defendant can simultaneously violate the Lanham Act and [federal] copyright law." Williams v. Cavalli S.P.A., No. CV 14-06659-AB (JEMx), 2015 WL 1247065, at *5 (C.D. Cal. Feb. 12, 2015) (describing cases involving simultaneous assertions of Lanham Act and copyright claims). See also Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 214, 120 S. Ct. 1339, 1345, 146 L. Ed. 2d 182 (2000) (a producer of goods can obtain a design patent or a copyright for the design if the design "does not yet have secondary meaning," at which time it would qualify for trade dress protection as well).

Similarly unavailing is GurglePot's contention that the features for which New SCL is seeking protection do not qualify as trade dress. Thus, GurglePot argues that trade dress protection cannot apply to separate, artistic elements of the Gurgling Cod. However, this court

finds that the plaintiff has read New SCL's allegations too narrowly.  As described above, Lanham Act protection encompasses "the design and appearance of a product together with the elements making up the overall image that serves to identify the product presented to the consumer."  Yankee Candle Co., 259 F.3d at 38 (quoting Chrysler Corp., 118 F.3d at 58).  Accordingly, "[t]rade dress involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques."  Gen. Motors Corp. v. Lanard Toys, Inc., 468 F.3d 405, 414 (6th Cir. 2006) (quoting Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP, 423 F.3d 539, 547 n.10 (6th Cir. 2005)).  While New SCL has pointed to various individual features of its product in order to illustrate how the GurglePot Pitcher is confusingly similar to its Gurgling Cod Trade Dress, its claims are not that limited, but are based on the "shape and appearance" of its product as a whole.  (See Countercl. ¶¶ 10, 12, 14).  Consequently, its allegations are sufficient to state claims for trademark protection.  See Yankee Candle Co., 259 F.3d at 38, 40-41 (discussing "product design/configuration" as a category of trade dress that may qualify for Lanham Act protection).

Finally, GurglePot argues that "[i]n a trio of rulings, the U.S. Supreme Court has established that the Lanham Act does not apply to features that render a product more useful or appealing – in particular, to such features that are more properly subject to federal patent and copyright laws."  (Pl. Mem. at 9).  This court finds that none of those cases support dismissal of the federal Counterclaims.

## Reliance on the Wal-Mart Decision

In the first case, Wal-Mart Stores, Inc. v. Samara Bros., Inc., Samara Brothers, Inc. a designer of children's clothing, brought claims against the well-known retailer, Wal-Mart

Stores, Inc., for selling so-called "knockoff" copies of Samara Brothers' designs. Wal-Mart Stores, Inc., 529 U.S. at 207-08, 120 S. Ct. at 1341-42. Those claims included, among others, federal law claims for copyright infringement and infringement of unregistered trade dress under § 43(a) of the Lanham Act. Id. at 208, 120 S. Ct. at 1342. The issue before the Court was "under what circumstances a product's design is distinctive, and therefore protectible," for purposes of the trade dress claim. Id. at 207, 120 S. Ct. at 1341. GurglePot cites Wal-Mart for the proposition that trade dress is not to be construed broadly to cover non-functional, product-design features unless they have acquired a secondary meaning, which identifies the source of the product and not just the product itself. (Pl. Mem. at 9-10). While this may be an appropriate statement of the law, New SCL has alleged sufficient facts to state a claim of trade dress violation under Wal-Mart, as it has alleged the existence of such a secondary meaning.

The Supreme Court held in Wal-Mart that the scope of the protection afforded under § 43(a) of the Lanham Act includes not just words or symbols, "but also 'trade dress' – a category that originally included only the packaging, or 'dressing,' of a product, but in recent years has been expanded . . . to encompass the design of a product." 529 U.S. at 209, 120 S. Ct. at 1342. It also held, however, that a product's design cannot be deemed "inherently distinctive" for purposes of proving a Lanham Act claim. Id. at 212, 120 S. Ct. at 1344. As the Supreme Court reasoned:

> In the case of product design, as in the case of color, we think consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs – such as a cocktail shaker shaped like a penguin – is intended not to identify the source, but to render the product itself more useful or more appealing.

Id. at 213, 120 S. Ct. at 1344.  Accordingly, the Court determined that in order to show that a product's design is distinctive, and therefore entitled to protection under the Lanham Act, the owner must establish "secondary meaning."  Id. at 216, 120 S. Ct. at 1346.  Thus, the owner must show that "consumers understand the design elements to signify the goods' *origin* and not just its attributes."  Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp., 419 F.3d 576, 579 (7th Cir. 2005) (emphasis in original).  In this case, New SCL alleges that the public "has come to associate the distinctive shape and appearance of the Gurgling Cod® (the 'Gurgling Cod Trade Dress') exclusively with New SCL." (Countercl. ¶ 12).  Moreover, GurglePot concedes for purposes of the present motion that New SCL's alleged trade dress is distinctive.  (Pl. Mem. at 8).  Therefore, New SCL's Counterclaims fall within the scope of the Lanham Act, as articulated by the Supreme Court in Wal-Mart.

### **GurglePot's Reliance on TrafFix Devices**

The second Supreme Court case on which GurglePot relies, TrafFix Devices, Inc. v. Marketing Displays, Inc., also fails to support its assertion that New SCL's Counterclaims must be dismissed.  In that case, the manufacturer and holder of expired patents for a dual-spring design mechanism used to keep outdoor signs upright in strong wind conditions filed suit against a competitor for trademark infringement, trade dress infringement and unfair competition.  TrafFix Devices, Inc., 532 U.S. at 25-26, 121 S. Ct. at 1258.  The critical issue before the Supreme Court was whether the existence of an expired utility patent for the dual-spring design foreclosed the possibility of claiming trade dress protection for the same design.  Id. at 28, 121 S. Ct. at 1259.  In its decision, the Court reaffirmed the "well-established rule that trade dress protection may not be claimed for product features that are functional."  Id. at 29, 121 S. Ct. at

13

1259. It also held that where trade dress protection is sought for the same feature claimed in an expired utility patent, the party seeking protection "must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." Id. at 30, 121 S. Ct. at 1260. Because the plaintiff in TrafFix Devices could not satisfy that burden, the Court determined that its trade dress claim was barred. Id.

GurglePot has not shown how the Supreme Court's decision in TrafFix Devices is applicable to the facts of this case. As an initial matter, there is no suggestion that New SCL ever held a utility patent for its Gurgling Cod pitcher. Therefore, the issue addressed by the Supreme Court in TrafFix Devices is not present in the context of this litigation. To the extent GurglePot contends that New SCL cannot claim trade dress protection because the features of its Gurgling Cod are functional, its argument is inadequate to warrant dismissal at this stage in the litigation. Admittedly, as a general matter, "a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." Id. at 32, 121 S. Ct. at 1261 (quoting Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 165, 115 S. Ct. 1300, 131 L. Ed. 2d 248 (1995)) (additional quotations and citation omitted). Moreover, the Supreme Court has observed "that a functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'" Id. (quoting Qualitex, 514 U.S. at 165, 115 S. Ct. 1300) (alteration in original). Here, however, New SCL insists that it is not seeking trade dress protection for the functional features of its product. (See Def. Opp. Mem. at 10 ("The Gurgling Cod is capable of functioning as a pitcher, but this is not the feature of the product configuration that New SCL seeks to

protect"). Even assuming functionality is at issue in this case, "[c]ourts have consistently held that '[f]unctionality is a question of fact.'" Fritz, DMA, Inc. v. Arthur D. Little, Inc., 944 F. Supp. 95, 102 (D. Mass. 1996) (quoting Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 843 (9th Cir. 1987)). Consequently, the resolution of that issue must await further development of the factual record. See id. (finding that Lanham Act claims "cannot be dismissed on the grounds that the . . . trade dress is functional" (quotations and citation omitted)).

### GurglePot's Reliance on the Dastar Decision

Finally, GurglePot relies on the Supreme Court's decision in Dastar Corp. v.Twentieth Century Fox Film Corp. to argue that New SCL is misusing trademark law to avoid the restrictions of copyright law, and to limit the public's right to copy and use copyrightable, but not copyrighted, elements of a sculptural work that exists in the public domain. (See Pl. Mem. at 11, 13, 15). Again, however, the Supreme Court's rulings in that case are inapplicable to the circumstances alleged here. In Dastar, the Court explained in relevant part that the Lanham Act was "*not* designed to protect originality or creativity," which are covered by copyright and patent law. See Dastar, 539 U.S. at 37, 123 S. Ct. at 2050. In this case, however, New SCL is not basing its Lanham Act claims on the originality or creativity of the Gurgling Cod. Instead, New SCL claims that "GurglePot's unauthorized use of the Gurgling Cod Trade Dress[,]" which the public has come to associate "exclusively with New SCL[,]" constitutes "a false designation of origin . . . which is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association among and between the parties and their respective goods, or confusion or mistake as to the origin, sponsorship, or approval among and between the parties and their respective goods." (See Countercl. ¶¶ 12, 28). In other words, New SCL claims that

15

GurglePot "sold [its] own products using [the defendant's] source-identifying imagery." See Sambonet Paderno Industrie, S.P.A. v. Sur La Table, Inc., Case No. CV 14-9473 FMO, 2015 WL 4498795, at *5 (C.D. Cal. July 23, 2015) (slip op.) (quoting Williams v. Cavalli, No. CV 14-06659-AB, 2015 WL 1247065, at *5 (C.D. Cal. Feb. 12, 2015)).  Such a claim "is not precluded by *Dastar*, and does not fail as a matter of law."  Id. at *6.  See also Through the Door, Inc. v. J.C. Penny Co., No. 06-C-540-S, 2007 WL 2265781, at *2 (W.D. Wis. Mar. 28, 2008) ("plaintiff's claim that defendants are wrongfully using its trade dress in a way that will confuse purchasers concerning the origin of non-copyrighted merchandise or services is entirely distinct from the copyright claim and an appropriate Lanham Act claim").

### C.     GurglePot's Challenge to New SCL's State Law Claims

In addition to its federal claims, New SCL has asserted two state law Counterclaims against GurglePot.  Specifically, by its Third Counterclaim, New SCL alleges that GurglePot's conduct constitutes common law trademark infringement and unfair competition under Massachusetts law.  By its Fourth Counterclaim, New SCL alleges that the plaintiff's infringing conduct amounts to unfair or deceptive acts or practices under Mass. Gen. Laws ch. 93A. GurglePot argues that these claims must be dismissed because "product features unprotected by the Lanham Act and in the public domain under federal patent and copyright [law], cannot constitutionally be protected by state law[.]"  (Pl. Mem. at 18).  Because the plaintiff has not shown, at least at this stage, that New SCL's Gurgling Cod Trade Dress is ineligible for protection under the Lanham Act, its motion to dismiss the state law claims must be denied as well.

"The Lanham Act, in contrast to the copyright [and patent] statute[s], does not directly preempt a parallel common law cause of action where facts exist to support it."  Yankee Candle

Co., Inc. v. Bridgewater Candle Co., LLC, 107 F. Supp. 2d 82, 87 (D. Mass. 2000), aff'd, 259 F.3d 25 (1st Cir. 2001). See also Bonito Boats, Inc., 489 U.S. at 154, 109 S. Ct. at 979 (explaining that pre-emptive nature of federal patent law does not prohibit the States from regulating the use of trade dress). Accordingly, "the States 'may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods.'" Bonito Boats, Inc., 489 U.S. at 154, 109 S. Ct. at 979 (quoting Sears, Roebuck & Co., 376 U.S. at 232, 84 S. Ct. at 789). In the instant case, as detailed above, New SCL has alleged sufficient facts to state claims for violations of its trademark rights. Therefore, it is not precluded from relying on those same facts to assert claims under state law, and GurglePot's motion to dismiss the state law Counterclaims is denied.

### IV.  CONCLUSION

For all the reasons detailed herein, the "Plaintiff's Motion to Dismiss Counterclaims" (Docket No. 76) is DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge